UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOHN DAVIS,

                Plaintiff,                    MEMORANDUM
                                              AND ORDER
   -against-                                   13 CV 6260 (RML)

THE CITY OF NEW YORK, et al.,

                Defendants.
------------------------------------------------------X
LEVY, United States Magistrate Judge:

        Plaintiff John Davis ("plaintiff") moves to compel DNA testing of defendant police officers William Sommer ("Officer Sommer") and Steve LaFortune ("Officer LaFortune") (collectively, the "officers" or "defendants") for comparison to DNA found on a stack of currency that he alleges the officers handled during a robbery. For the reasons explained below, plaintiff's motion is denied.

## BACKGROUND AND FACTS

        Plaintiff commenced this action in November 2013 pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, and alleging violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (Complaint, dated Nov. 12, 2013 ("Compl."), ¶¶ 30–36, Dkt. No. 1.) Plaintiff additionally brings several New York state constitutional claims and a claim for negligent infliction of emotional distress under New York law. (Id. ¶¶ 37–45.) Specifically, plaintiff alleges that on the evening of February 3, 2011, Officers Sommer and LaFortune[1] entered a convenience store where he was a customer and

---

[1] As discussed *infra*, plaintiff has not personally identified Officers Sommer and LaFortune as the men who robbed him. (See Defendants' Memorandum of Law in Opposition to Plaintiff's Renewed Motion to Compel DNA Testing, dated Dec. 18, 2018 (Defs.' Opp.), Dkt. No. 113, at
(Continued . . .)

robbed him of approximately $1,327 in cash. (Id. ¶¶ 14–21.) Plaintiff alleges that he was carrying approximately $4,000 in cash on his person at the time of the robbery, divided into two stacks valuing approximately $1,327 and $2,673. (Id. ¶¶ 17, 20–21.) He alleges that the officers handled both stacks of currency in the course of the robbery, but took only the smaller of the two, allowing him to keep the other. (See id.) He states in his sworn affidavit that the currency that was returned to him has been kept in a safe deposit box since the time of the incident. (See Affidavit of John Davis, sworn to Mar. 26, 2018, Dkt. No. 97-1, ¶ 12.)

In April 2016, plaintiff, then *pro se*,[2] requested permission to have DNA testing performed on the currency that was allegedly returned to him at the time of the incident. (See Letter of John Davis, dated Apr. 13, 2016, Dkt. No 37.) I informed plaintiff that he was free to conduct testing of the currency at his own expense. (See Minute Entry, dated Apr. 22, 2016.) Plaintiff subsequently obtained testing of the currency, which revealed the presence of male DNA belonging to at least one person other than himself. (See Reply in Support of Plaintiff's Rule 56(d) Motion to Reopen Discovery to Obtain DNA Testing, dated Jan. 11, 2019 ("Pl.'s Reply"), Dkt. No. 114, at 1; Forensic Biology Report, dated Apr. 24, 2017, Dkt. Nos. 73, 74.)

On June 5, 2017, plaintiff moved to compel buccal swabs of the officers in order to compare their DNA to the DNA found on the currency. (See Minute Entry, dated June 5, 2017.) I initially deferred a ruling on plaintiff's motion until after defendants' anticipated

---

3, 4–6.) He testified at his deposition that the men who robbed him wore plain clothes, arrived in an unmarked vehicle, and did not tell him their names or otherwise identify themselves as police officers. (See Transcript of Deposition of John Davis, dated Feb. 2, 2016, Dkt. No. 86-2, at 86:23–87:3, 87:21–88:1, 94:14–97:16.)

[2] Plaintiff's original counsel withdrew in October 2015. (See Order Granting Motion to Withdraw as Attorney, dated Oct. 1, 2015.) Plaintiff proceeded *pro se* until obtaining his current counsel in March 2018. (See Notices of Appearance, dated Mar. 29, 2018, Dkt. Nos. 95, 96.)

2

motion for summary judgment had been decided.  (See id.)  After obtaining his current counsel, plaintiff renewed his motion and requested that it be decided prior to the motion for summary judgment.  (See Minute Entry, dated Nov. 29, 2018; Pl.'s Reply.)  I heard argument on January 28, 2019, with a follow-up conference on March 21, 2019.  (See Minute Entries, dated Jan. 30, 2019, Mar. 22, 2019.)

## DISCUSSION

### A. Legal Standard

The Second Circuit has not decided what standards should apply in determining whether to grant a motion to compel DNA testing as part of civil discovery.  The only case in this district to contemplate that issue is McGrath v. Nassau Health Care Corp., 209 F.R.D. 55 (E.D.N.Y. 2002), a case which is similar but not identical to this one.  McGrath was a sexual harassment case, in which the plaintiff testified at a deposition that she and the defendant had never had a consensual sexual relationship.  209 F.R.D. at 57–58.  In order to impeach her testimony, the defendant moved for an order compelling the plaintiff to provide a DNA sample for comparison to DNA found on a blanket, on which he claimed he and the plaintiff had consensual sexual intercourse and which was stained with her blood.  Id.  The defendant's motion was granted, and the plaintiff was ordered to submit to DNA testing in the form of either a buccal swab or a blood sample.  Id. at 65.  McGrath held that a court may order a party to provide a DNA sample in civil discovery for good cause shown, and established a three-pronged test for determining when good cause exists for such an order.  209 F.R.D. at 61–62.  In order to compel a DNA sample under the McGrath test, the movant bears the burden of establishing that: (1) the DNA evidence is relevant; (2) there is a reasonable possibility that testing will yield a match; and (3) the privacy rights of the individual being tested will not be unduly affected.  Id.;

see also Kiniun v. Minn. Life Ins. Co., No. 3:10 CV 399, 2012 WL 12899102, at *2 (N.D. Fla. May 11, 2012) (stating the requirements of the McGrath test).

B. Analysis

1. Relevance

The first prong of the McGrath test requires plaintiff to establish that the DNA evidence sought is relevant. 209 F.R.D. at 61. Relevance for the purposes of discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); see also Henry v. Morgan's Hotel Grp., Inc., 15 CV 1789, 2016 WL 303114, at *3. Relevant evidence "need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1); see also Forsythe v. Midland Funding LLC, 18 CV 3276, 2019 WL 245459, at *2 (E.D.N.Y. Jan. 17, 2019). The DNA evidence that plaintiff requests in this case is clearly relevant because it bears directly on the issue of liability. Thus, I find that plaintiff has met his burden on the first prong of the McGrath test.

2. Reasonable Possibility of a Match

The second prong of the McGrath test requires plaintiff to make a "prima facie showing of a reasonable possibility of a match." 209 F.R.D. at 61. To make a prima facie showing of a reasonable possibility of a match, plaintiff must show that there is (1) "something to test [defendants'] DNA sample[s] against" and (2) "some factual basis for believing that a match may be made." See id. at 62.

In practice, federal courts applying the McGrath test have found a reasonable possibility of a match in situations where there was some factual "plus" factor linking the putative subject of the DNA testing to the comparator evidence, beyond simply the movant's

4

assertion that a match would be made. For example, in McGrath itself, the court found a reasonable possibility of a match where forensic testing of the blanket had revealed the presence of blood, as well as both male and female DNA profiles, and where defendant had testified about the incident that had resulted in the blood getting on the blanket. Id. Similarly, in D'Angelo v. Potter, a District of Massachusetts case, the court found a reasonable possibility of a match where swabs taken from a boiler room tested positive for semen, plaintiff had testified that the defendant had raped her in the boiler room less than a month before the swabs were taken, and no evidence in the record indicated that other persons had used the room for sex during the intervening time. 224 F.R.D. 300, 303 (D. Mass. 2004). Meanwhile, in Kiniun, a Northern District of Florida case involving an allegation that the plaintiff had murdered his mother,[3] the court found a reasonable possibility of a match where DNA found on the plaintiff's shoes matched DNA found at the murder scene, and where the plaintiff had "all but stipulated" that the DNA at the murder scene was his. 2012 WL 12899102, at *2–3.

On the other hand, in Harris v. Athol-Royalston Regional School District Committee, a District of Massachusetts case preceding McGrath, the court denied a motion to compel DNA testing in an employment retaliation case where plaintiff sought to compare defendants' DNA to a strand of hair affixed to an envelope anonymously sent to a local newspaper containing plaintiff's employment records. 206 F.R.D. 30, 31, 34–35 (D. Mass. 2002). In that case, the court found that there was "no direct connection linking any of the

---

[3] Kiniun was a civil case concerning the disposition of life insurance proceeds. See 2012 WL 12899102, at *1. The plaintiff, a beneficiary of his mother's life insurance policy, had made a claim for proceeds following her murder. Id. During their investigation of his claim, the defendant insurers learned that the plaintiff was a suspect in her murder and refused to pay him the proceeds. Id. He subsequently filed suit seeking payment of the proceeds. Id.

5

Defendants to the alleged 'hair and other biological matter' on the anonymous envelope" and no "basis for concluding that such hair and/or matter belonged to the person who sent the packet, rather than someone who opened the packet, or one of the several individuals who touched it thereafter." Id. at 35.

Plaintiff in this case analogizes to McGrath, arguing that the fact that the forensic testing of the currency revealed the presence of male DNA other than plaintiff's, taken in conjunction with plaintiff's allegations that defendants robbed him, establishes a prima facie showing of a reasonable possibility of a match. (Pl.'s Reply at 5.) Defendants, on the other hand, argue that there is little possibility of a match, given the inherent fungibility of currency and the frequency with which it changes hands. (See Defendants' Memorandum of Law in Opposition to Plaintiff's Renewed Motion to Compel DNA Testing, dated Dec. 18, 2018 (Defs.' Opp.), Dkt. No. 113, at 4.) They also raise contamination and preservation concerns, given that the currency was in plaintiff's possession for six years between the time of the alleged robbery and the time that forensic testing was carried out on the currency. (Id.) Finally, they note that plaintiff has never personally identified defendants as the men who robbed him. Not only did he fail to identify them in at least one photo array where their photos appeared,[4] but he mistakenly identified in them in a photo array where their photos *did not* appear and, furthermore, has never provided accurate physical descriptions of them. (Id. at 4–6.)

I agree with defendants that plaintiff has not established a reasonable possibility of a match. While the reasonable possibility of a match standard seems, on its face, to imply a low burden of proof, as discussed above, courts applying it have required a fairly robust factual

---
[4] Defendants emphasize that plaintiff took part in six photo arrays. (Defs.' Opp. at 4.) However, they only allege that one of those photo arrays, the one that took place June 3, 2011, actually contained defendants' photos. (Id. at 4–5.)

6

showing prior to ordering DNA testing. For example, in both McGrath and D'Angelo, biological matter was found in a place where it would not ordinarily be expected to be found, and the movant gave corroborating testimony explaining how it got there via the putative subject of the testing. See D'Angelo, 224 F.R.D. at 303; McGrath, 209 F.R.D. at 62. Thus, in both cases, the presence of biological matter in an unexpected location, combined with testimony linking it to the individuals to be tested, increased the likelihood that a match would be made beyond the level at which it would have been based merely on the movant's assertions.

Here, in contrast, the preliminary testing has merely revealed the presence of male DNA on an object—currency—that one would normally expect to harbor human DNA. (See Defs.' Opp. at 4.) While plaintiff attempts to portray the presence of male DNA on the currency as a "plus" factor analogous to the blood on the blanket in McGrath, the court instead sees it as a "neutral" factor, given the nature of currency as an object that is frequently handled. Moreover, defendants have asserted several "minus" factors, which decrease the likelihood of a match: the passage of time between the alleged robbery and the preliminary forensic testing, as well as the fact that plaintiff has never personally identified the officers as the men who robbed him. Therefore, I find based on the record before me, and on my analysis of McGrath and its progeny, that plaintiff has not met his burden of establishing a reasonable possibility of a match.[5]

---

[5] Another piece of evidence that plaintiff proposes as a "plus" factor is the deposition testimony of Sherrell Carter, who stated that she recognized the officers as the men who had robbed plaintiff when she saw them in uniform on the day following the alleged robbery. (See Transcript of Deposition of Sherrell Carter, dated July 24, 2017, Dkt. No. 86-11, at 111:10-115:3; see also Defs.' Opp. at 6.) I cannot evaluate Ms. Carter's credibility in the context of this discovery motion, but I find that her testimony is outweighed by the fact that plaintiff himself has been unable to identify the officers and has given descriptions that were incorrect and inconsistent, even as to the race of one of the officers. (See Defs.' Opp. at 5–6.)

3. Privacy Rights

The third prong of the McGrath test requires plaintiff to establish that testing would not unduly affect the officers' privacy rights. 209 F.R.D. at 61. The court sees privacy in this context as having two components. The first has to do with the risk that sensitive personal information could be made public or used for purposes other than the testing that is the subject of this motion. The second has to do with the physical intrusion that the testing represents, and the dignitary harm that results from being ordered to submit to such an intrusion. See, e.g., United States v. Nicolosi, 885 F. Supp. 50, 55 (E.D.N.Y. 1995) ("It is typically the case that a saliva sample is obtained by swabbing the inside of the subject's mouth with a pad of some sort. Such a scenario, wherein a citizen is directed to submit to an intrusion into his body, is properly viewed as implicating his dignitary interests.") (footnote omitted).

The court is satisfied that plaintiff has adequately addressed its concerns regarding informational privacy. Plaintiff has identified a lab that could conduct the testing with the following privacy protective measures: (1) anonymous identifiers yielding a "yes" or "no" result, such that the officers' names would never be attached to the samples; (2) destruction of the samples and all testing materials upon written request; and (3) disclosure of the results only to individuals listed as authorized points of contact or upon receiving a court order. (Pl.'s Reply at 7; see also Transcript of Hearing Held on Jan. 28, 2019, Dkt. No. 115.) In light of these proposed measures, the court sees the risk of informational leakage as being very low.

Moreover, the court finds the physical act of taking a DNA sample via buccal swab to be minimally invasive. See McGrath, 209 F.R.D. at 61 (finding that a buccal swab represents "only a minimal intrusion") (quoting Hargrave v. Brown, 783 So. 2d 497, 500 (La. Ct. App. 2001)); see also Maryland v. King, 569 U.S. 435, 463–64 (2013) (in the context of a

criminal investigation, finding that a buccal swab represents only a "brief" and "minimal" intrusion, which "involves virtually no risk, trauma or pain.") (quoting Schmerber v. California, 384 U.S. 757, 771 (1966)). The court nonetheless acknowledges that, due to the rarity of DNA testing in the context of civil discovery, even a minimal physical intrusion may inflict a significant dignitary harm upon the subject of such testing. See D'Angelo, 224 F.R.D. at 303 ("Providing samples of bodily fluids or cells in civil litigation is so unusual that, indeed, the parties to civil litigation would very well feel that being required to give such samples is 'very intrusive.'") (quoting Harris, 206 F.R.D. at 35.) While testing may nevertheless be permitted in some cases, the court finds the likelihood of a match in this case to be so low that the dignitary cost to defendants[6] is simply not justified.[7]

---

[6] The court emphasizes that no special consideration has been given to the fact that the defendants in this case are police officers. The court views this as a matter of individual rights, equally relevant whether the putative subject of the DNA testing is a police officer, a civilian, a plaintiff, or a defendant.

[7] For this same reason, the court additionally finds that the discovery plaintiff requests is not proportional to the needs of the case. The McGrath test does not incorporate proportionality. However, since the time of that decision, Federal Rule of Civil Procedure 26(b)(1), which governs the scope of discovery, has been amended to give greater consideration to proportionality. See Sarkees v. E. I. DuPont de Nemours & Co., 17 CV 651, 2019 WL 1375088, at *2 (W.D.N.Y. Mar. 27, 2019) ("Proportionality has assumed greater importance in discovery disputes since the recent amendments to Rule 26 of the Federal Rules of Civil Procedure."). The Rule, as amended in 2015, allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and *whether the burden or expense of the proposed discovery outweighs its likely benefit*." FED. R. CIV. P. 26(b)(1) (emphases added). Thus, the court finds it appropriate and necessary to take proportionality into account in its analysis of plaintiff's motion.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel DNA testing of the officers is denied.

SO ORDERED.

                                                      /s/
                                        ROBERT M. LEVY
                                        United States Magistrate Judge

Dated: Brooklyn, New York
       July 18, 2019